THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. EDWARD MOYNIHAN, PLAINTIFF IN ERROR.

Submitted March 24, 1919—Decided May 15, 1919.

On error to the Supreme Court, in which the following *per curiam* was filed:

"This case is before us for review upon strict bills of exception and under the one hundred and thirty-sixth section of the Criminal Procedure act. Moynihan, the plaintiff in error, was convicted of murder in the second degree in the Hudson Oyer and Terminer, on an indictment charging him with having murdered Edward Fantry on October 7th, 1916. The indictment is composed of three counts: The first count is in the form authorized by statute, in charging the crime of murder; the second count is for manslaughter and the third for assault and battery.

"The facts are briefly these: Fantry, the deceased, with several companions, was seated at a table in the dining-room of a 'restaurant, in Scheutzen Park; his companions ordered beer, and considerable quantity of it had been drunk when deceased ordered some more beer, and no sooner had the waiter turned away to execute the order than shots were fired in the direction of the table at which the deceased was seated, with fatal effect to the deceased. The participation of the plaintiff in error in the firing of the shots, one of which caused Fantry's death, rests, as is stated, in the brief of counsel of Moynihan, upon the testimony of Kennel and Kettles, two police officers, who testified on behalf of the prosecution, Kennel testifying that Moynihan and another man were firing shots from a revolver in the direction of a table at which the deceased and his companions were seated, and that when the witness apprehended Moynihan a revolver, with five chambers discharged, dropped from the latter's hand and was picked up by Kettles and found to be still hot from its recent use. Neither Kennel nor Kettles was present when the first shots, which proved fatal to Fantry, were fired, but Kennel arrived in time to see that Moynihan was shooting from a revolver in the direction of a table at which Fantry had been seated, and that several men were under the table firing from loaded revolvers in the direction where Moynihan and his companion were standing. A most important fact in the case is that the waiter who served the beer at Fantry's table testified that the first shot fired came from the direction of a table at which three men were seated, but that he was unable to identify any

of them. The testimony of this witness as to when and how the shooting started was not controverted, nor is there any testimony or circumstance in the case which would justify the inference that Fantry and his companions were the aggressors. On the contrary, the undisputed testimony in the case is that the attack made upon the party seated at the table with Fantry was unprovoked, and that it was only after the attack had been made upon them that they dropped to the floor and from under the table began to fire upon their assailants.

"Moynihan, in his defence, denied that he participated in the shooting and that he had a revolver either in his hand or elsewhere on his person, and asserted that he did not know Fantry, which was uncontradicted; had no motive for wishing or causing his death, and that he, Moynihan, was falsely accused of being connected with the shooting by Kennel, the detective, and was the victim of the latter's overzealousness.

"The alleged errors, upon which counsel of plaintiff in error seek to reverse the judgment on review, relate solely to the judge's charge, to which a general exception was taken, and are made the basis of the assignments of errors and specifications of causes for reversal.

"First, counsel of plaintiff in error, in their brief, argue that the court erred in eliminating from the consideration of the jury the question of manslaughter; that under the evidence, if the jury believed Moynihan's story, he was entitled to an acquittal, but if the jury disbelieved his story, which they did, they could properly convict him of one of the degrees of murder or conclude under the evidence that he unlawfully killed Fantry without malice aforethought, expressed or implied, in a heat of passion, due to adequate provocation from the excitement incident to a sudden brawl or combat.

"This contention of counsel is manifestly based upon a misconception of the evidence in the case and of the legal effect of the nature of the defence set up by the defendant to the accusation against him. Bearing in mind that the origin of the shooting, and who were the aggressors, as detailed by the witnesses for the state, were not in dispute, and that the de-

fence consisted solely of a denial by the defendant that he was in any way concerned in the combat, and that he did not claim to have exercised the right of self-defence or that he had acted upon such provocation as in view of the law would render the homicide manslaughter, therefore it was not erroneous for the trial judge in his instruction to the jury to say that the jury 'may disregard the count which charges the defendant with assault and battery, and also the count that charges manslaughter, because under the evidence in this case the defendant is guilty of murder, or else is not guilty of any of these charges whatever.' This instruction is in harmony with what was said on this subject by the Court of Errors and Appeals in *State* v. *Valentina,* 71 *N. J. L.* 552 (opinion per Mr. Justice Dixon), and in *State* v. *Pulley,* 82 *Id.* 579 (opinion per Chief Justice Gummere).

"The next assignment and specification of cause for reversal, argued in the brief, are that the court below unwarrantably assumed as a fact 'that Fantry was shot down in cold blood while sitting at a table, and the person who fired the shot was apparently trying to commit murder or was doing an act which might cause blood to shed.'

"All the evidence in the case points to the fact that Fantry while sitting at a table, in social intercourse with his companions, without any warning and without any provocation on his part to the commission of the deed, was shot to death by some person. We cannot say that the characterization of the act, by the court below, as a deed committed in cold blood, and that the expression, that the person who fired the shot was apparently trying to commit murder or doing an act which might cause blood to shed, were not proper comments under the evidence in the cause.

"The third assignment and specification of cause for reversal are based upon the assertion of counsel of plaintiff in error that the trial judge improperly defined murder in the first and second degree. Assignment and specification 11 in the brief relate to the same subject.

"As it appears that the defendant was convicted of murder in the second degree, it becomes unimportant under the evi-

dence whether or not the court properly defined murder in the first degree. The erroneous definition could not possibly have prejudiced him, since the jury practically acquitted him of murder in the first degree by finding him guilty of murder in the second degree.

"The contention that the court erroneously defined murder in the second degree is without proper support. The judge read to the jury the various provisions of the statute relating to and defining the degrees of murder. At the close of the case he instructed the jury as follows: 'To constitute murder in the first degree there must be an intention to take life. No particular length of time need intervene between the formation of the purpose to kill and its execution. It is not necessary that the deliberation and premeditation should continue for an hour or a minute; it is enough if the design to kill be fully conceived and purposely executed. It is not necessary that the deliberation or the premeditation should exist for any stated period of time; it might exist only for a moment, but if the purpose to kill is willful and is premeditatedly carried out, it is murder in the first degree.' A portion of this charge is an excerpt from the opinion of the Court of Errors and Appeals in *Donelly* v. *State*, 26 *N. J. L.* 601, 616, criticised in *State* v. *Bonofiglio*, 67 *N. J. L.* 239, 244, by that court, in an opinion by Chief Justice Gummere, as to its accuracy in defining murder in the first degree. But, as has already been said, it is of no material consequence whether or not the crime of murder in the first degree was accurately defined by the court, since the defendant was convicted of a lower degree. But it is important to notice that the trial judge after defining murder in the first degree, and having said that one of its constituent elements is the intent to take life, made the only distinguishable feature between the two degrees of murder, the absence of willfulness in murder in the second degree. This, in substance, was an instruction to the jury that the intent to take life was a necessary constituent element of murder in the second degree. The definition of murder in the second degree, though clearly erroneous, was favorable to the defendant. It put a greater burden on the

state to establish the defendant's guilt of the lesser degree of murder. The intent to take life is not a necessary element to constitute the crime of murder in the second degree; the intent to do grievous bodily harm is sufficient. The defendant is, therefore, in no position to complain that he has been prejudiced in maintaining his defence upon the merits of the case.

"Another ground urged for reversal in the brief of counsel of plaintiff in error is that the trial judge· erred in omitting to charge on the question of malice, in defining the degrees of murder. This omission, if it can properly be called such, cannot be assigned as error here, because·it appears that the court was not requested by counsel of plaintiff in error to charge the jury on the question of malice. If counsel desired that the court should define malice to the jury, the proper course to pursue was to present a request to the court to define malice.

"It is not true, as counsel argue in their brief, that the court eliminated from the jury the question of malice. This is an unwarranted deduction made by counsel, because the court did not in terms speak of malice being an ingredient of the crime charged. Malice, in its legal sense, means nothing more than an evil state of mind. The premeditated and deliberate design of a sane man to kill a human being, purposely executed without adequate legal justification, stamps such an act as the result of an evil state of mind; hence, an act conceived in malice. The law implies malice from the commission of the wrongful act.

"The other assignments and specifications of causes are without merit.

"The judgment is affirmed."

For the plaintiff in error, *Alexander Simpson* and *George E. Cutley*.

For the state, *Robert S. Hudspeth,* prosecutor of the pleas, and *George T. Vickers,* assistant prosecutor.

PER CURIAM.

The judgment under review will be affirmed, for the reasons set forth in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 11. ·

*For reversal*—None.